# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| Monika A. Sommers, | : | Case No. 1:09CV1183 |
| Plaintiff | : | Judge Patricia A. Gaughan |
| v. | : | Magistrate Judge David S. Perelman |
| Commissioner of Social Security, | : | **REPORT AND RECOMMENDED DECISION** |
| Defendant | : | |

This action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of defendant's final determination denying plaintiff's claims for disability benefits, (DIB), 42 U.S.C. §§416, 423 and supplemental security income benefits (SSI), 42 U.S.C. §1381 et seq., is pending decision upon the parties' submissions on the merits, pursuant to which plaintiff seeks entry of final judgment in her favor, alternatively, an order of remand, and defendant seeks final judgment upholding the decision below.

Plaintiff applied for benefits on July 12, 1005, alleging an onset date of May 15, 2005. In an accompanying Disability Report - Adult the questions "What are the illnesses, injuries or conditions that limit your ability to work?" and "How do your illnesses, injuries or conditions limit your ability to work?" were answered "Ovarian cancer, cysts, anxiety, depression, endodemitriosis [sic]" and "I am in constant pain. I take pain meds and that makes it very difficult to work. I have trouble concentrating on things. I am suffering from fepression [sic] and anxiety all the time. I have difficulty being around others at times."

Upon denial of plaintiff's claims on the state agency level hearing de novo before an Administrative Law Judge (hereinafter ALJ) was requested.  Evidentiary hearing, at which plaintiff was represented by counsel, was held on October 23, 2008.  Also testifying at that proceeding were a medical expert, Dr. Joseph Cools,[1] and a vocational expert, Ms. Barbara Burk.[2]

From the documentation regarding the plaintiff's employment history it is evident that she has held a succession of short term jobs.  One of the three questions her counsel asked of her was "[W]hy did you have so many jobs?" to which she responded "I don't know," which was followed by "Why did you lose jobs?".  Here answer to that question was "Because I always feel like people are picking on me.  I don't like when people look at me.  I always think they're thinking negative of me."

Although in his more extensive examination of the plaintiff the ALJ went into her work history in greater detail, remarkably the one thing neither the ALJ nor her counsel asked the plaintiff was why she considered herself unable to work.

The focus of the issues raised by the plaintiff is the testimony of Dr. Cools.  Consequently, this Court will quote that testimony at length.

> Q. [ALJ] All right, the onset date of this case is 5/15/05.  Since that date what medical impairments does this record show?
>
> A. Okay, there's been a number of psychiatric evaluations, psychological evaluations, Your Honor.  The consensus is that there's major depressive disorder, recurrent.  A secondary diagnosis of a personality disorder.  And that is not a consistent diagnosis over all of the evaluation, so I believe that's the most

---

[1] Although Dr. Cools CV is not in the record the ALJ alluded to him as a psychologist, and plaintiff's counsel stipulated to his qualifications.

[2] The hearing was held by video conference, with the plaintiff and her counsel in Cleveland and the ALJ in Oak Brook, Illinois.  Where Dr. Cools was is not known, as he participated in the proceeding by telephone.

pertinent diagnosis because it goes with difficulty dealing with other people, which I thinks is a main limiting factor. There's also a diagnosis of attention deficit, hyperactivity disorder, post traumatic stress disorder, panic disorder with agoraphobia. And this is a very simple complaint. These are all found in Dr. Baldimer's [phonetic] report. I believe that's Exhibit 10F. He diagnosed her early on, as of November of 2005 and even before that in August of 2005. Interestingly, enough Dr. Baldimer has a very kind of pessimistic diagnosis with her and he stated in his medical source statement that, the fact that she would not be able to sustain any close activity, either her difficulty in maintaining concentration, pace, persistence. Difficulty in working and conduct with other people. And difficulty completing a normal workday or workweek without interference from psychologically based symptoms. This was in direct contrast with, with another psychiatric [INAUDIBLE] fair to moderately impaired. So, we have some, some conflict in the record, which I don't think we've found resolvable. I think what Dr. Baldimer was concentrating on mainly was the, the fact that the claimant has had so many difficulties in her interpersonal relationships. That was the main limiting factor. She reports that she's had, at one time, she reports having more than 50 jobs in her short working career. And lost most of those jobs by either quitting or getting fired. [INAUDIBLE] that would seem to be the case, that she's lost a number of jobs for a variety of reasons, but usually due to some conflict in the work setting. There are extensive case notes, Exhibit 10F, from Community Psychiatric report, treating sources. These are social workers who have medically acceptable source statements, that they do indicate the difficulty she has relating to other people. She gets very angry, very quickly. She tends to get hurt feelings and, and not be able to deal with that and [as] a result gets irritable, angry, feels that others are judging her negatively and tends to have a, initially some idea about relationships that simply break down and she becomes disappointed in, in the people free-release [phonetic] with her. But [INAUDIBLE], I think, even more important is the depression. By the way, the depression [INAUDIBLE] medication, including anti-psychotic medications, like [INAUDIBLE] or anti-depression medications, Zoloft and—

Q. What did you say about the depression? It's controlled or not controlled?

A. Controlled, pretty much.

3

> Q. Okay.
>
> A. Again, she's been on a number of medications and eventually it seems like the medications quit working. I think what's not working is the fact that it's in her conflict ability [INAUDIBLE] depression, per se, [INAUDIBLE] I think it's just a reaction to other people. Bottom line, Your Honor, is that I don't think that she meets or equals any listing. I don't think the depression is that severe. Her personality disorder is severe, but I don't think it's at list level.
>
> Q. What type of limitations is, is—
>
> A. Primarily limitations are engaging other people. I think in a work site situation that she would tolerate no more than very brief, very superficial, very infrequent contact with anybody, including the general public, supervisors and peers. I, I think that even under ordinary supervision that she would tend to feel negatively if evaluated and get into either an argument with a supervisor or, or just plain walk off. And, and the same with peers. I think that her natural tendency is to look for things that, that people are criticizing her for. She doesn't tend to look on the positive side of relationship as much as looking for the things that people are criticizing for.
>
> Q. What you're telling me, is that when I ask VE a question I'm going to have a hard time coming up with a particular RFC in this case that's going to be very meaningful for finding people for her to work with.

In postulating his hypothetical question to the vocational expert the ALJ asked Ms. Burk to assume an individual of the plaintiff's personal profile who was limited to "incidental contact with co-workers" which he defined as "pretty much independent but there may be others around: And a job that does not require a lot of direct and continuous supervision. . . .In other words, someone gives directions and it's, an unskilled type work probably would be another factor. It's something that you don't have a supervisor checking every few minutes on what's going on, but maybe at the end of the day to see how much the total production was or something, but something that's pretty

independent." The witness responded that the jobs of commercial cleaner, landscape gardener, and hotel maid would fit that hypothetical.

On November 13, 2008 the ALJ entered his opinion denying plaintiff's claims. That decision became defendant's final determination upon denial of review by the Appeals Council on April 15, 2009. The ALJ's "Findings of Fact and Conclusions of Law" were:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2009.

2. The claimant has not engaged insubstantial gainful activity since May 15, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: major depression, personality disorder, attitude deficit hyperactivity disorder (ADHD), and post traumatic stress disorder (PTSD) (20 CFR 404.1521 *et seq.*, and 416.921 *et seq.*).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix ! (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with no contact with the general public, only incidental contact with co-workers, no intense supervision, and involving simple, routine, repetitive tasks.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1563 and 416.963).

7. The claimant was born on November 3, 1974 and was 31 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

5

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 15, 2005 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

On this appeal the following arguments are advanced on behalf of the plaintiff:

A. <u>Maid</u>: Sommers could not work as a maid assuming as true the ALJ's residual functional capacity assessment and the vocational expert's testimony.

B. <u>Dr. Cools</u>: The ALJ erroneously evaluated medical expert Dr. Cool's opinions.

   1) An ALJ must evaluate expressly and reasonably the opinions of a non-examining medical expert.

   2) The ALJ misstated (through omission) Dr. Cools' opinions.

   3) Dr. Cools opined that Sommers was more limited than the ALJ found through his residual functional capacity assessment.

   4) The ALJ erroneously failed to provide any reason for rejecting Dr. Cools' opinions more restrictive than his mental residual functional capacity assessment.

   5) The ALJ's errors were harmful.

      a) Sommers was disabled under SSR 85-15.

      b) Sommers was disabled given the vocational

>           expert's testimony.
>
>       c) The ALJ's hypothetical question was
>          inaccurate and incomplete.
>
>   C. <u>Closed Period</u>. Assuming as true the ALJ's rationale, Sommers
>      was disabled during a closed period.
>
>   D. <u>Dr. Wagner</u>: Non-examiner. Dr. Wagner's opinions are not
>      substantial evidence for the ALJ's decision.

The plaintiff's first argument, while possibly reflective of an inadvertence in the ALJ's finding as to the plaintiff's residual functional capacity,[3] is correct.

In his Finding No. 5 the ALJ precluded all contact with the general public, which differs from his hypothetical to the vocational expert. The vocational expert stated that hotel maids have incidental contact with the general public. This being so, accepting Finding No. 5 as written, as this Court must, it would rule out the job of hotel maid.[4]

This brings us to the multiple issues revolving about the testimony of Dr. Cools.

Again, in this Court's opinion the plaintiff is correct in his challenges to the ALJ's decision.

The only reference to Dr. Cools' testimony in the body of the ALJ's decision is in the following paragraph:

> In terms of the claimant's alleged psychological impairments, the medical expert cited the psychiatric evaluation of Dr. Ibrahim and the psychiatric evaluation of Dr. Alamir, both of which were performed in 2005. After reviewing the objective medical evidence and listening to the claimant's testimony, he said that, it was his opinion, that the claimant would have limitations in dealing with others. Dr. Coos stated that the claimant should have brief contact with the general public, supervisors, and peers. The medical expert testified

---

[3] The ALJ's decision is not one of the most artfully written this Court has reviewed.

[4] This, however, would not invalidate the ALJ's ultimate conclusion, as the job of hotel maid was but one of those he found the plaintiff capable of performing.

7

> that the medical records showed that the claimant's depression is pretty much controlled with medications.

Dr. Cools did not simply state that the plaintiff should have "brief contact with the general public, supervisors and peers." What he did state was that "she would tolerate no more than <u>very brief, very superficial, very infrequent contact with anybody</u>, including the general public, supervisors and peers" (emphasis added), a much greater restriction than that set out by the ALJ.

Further, the ALJ's very cursory reference to Dr. Cools extensive testimony totally disregards the medical expert's opinion that "I think that even under ordinary supervision that she would tend to feel negatively if evaluated and get into either an argument with a supervisor or, or just plain walk off." One does not have to be a vocational expert to understand that such behavior may be inconsistent with the ability to engage in substantial gainful work activity.

This reviewing court has no way of knowing whether, or to what extent, the ALJ's erroneous and incomplete perception of Dr. Cools' testimony factored into his holding that the plaintiff is not disabled.

In addition, this Court has no idea where the ALJ's finding that the plaintiff's limitations were to "no intense supervision," as contained in Finding No. 5, comes from. Nothing in the text of that Finding sheds any light on its source, and it certainly does not derive from the testimony of the medical expert. It is also at odds with the hypothetical question the ALJ put to the vocational expert, which posited a job that "does not require a lot of direct and continuous supervision," a level different than "no intense supervision."

In this Court's opinion these errors of commission and omission by the ALJ are alone sufficient to call for reversal of the defendant's final determination and an order of remand pursuant to the fourth sentence of §405(g). This being so, this Court sees no useful purpose to be served in

addressing the other arguments advanced by the plaintiff.

It is, accordingly, recommended that such an order be entered.


                                        s/DAVID S. PERELMAN
                                        United States Magistrate Judge


DATE:    August 27, 2010


## OBJECTIONS

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).